**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **LARRY ADAMS,** | § | |
| **TDCJ-CID #1582430,** | § | |
| | § | |
| **VS.** | § | **CASE NO. 2:11-CV-118** |
| | § | |
| **OFFICER TURKEY, ET AL.** | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff Larry Adams, an inmate at the Texas Department of Criminal Justice (TDCJ), is suing several Nueces County Jail employees alleging that defendants violated his constitutional rights when he was housed in the Nueces County Jail as a pretrial detainee. Adams claims that the defendants used excessive force, failed to protect him, and also raises state law claims of assault and battery and negligence.

Defendants moved for summary judgment on the grounds that 1) there is no evidence of a constitutional violation, or if there is, Defendants are entitled to qualified or official immunity; 2) Adams failed to exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Acts; and 3) Plaintiff's claims are barred by Edwards v. Baliosk, 520 U.S. 641 (1997). (D.E. 70).

For the reasons stated herein, the motion for summary judgment is GRANTED on the issue of exhaustion and plaintiff's action is dismissed without prejudice.

## I.   Jurisdiction

The Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

## II.   Procedural Background

While incarcerated at the Allred Unit in Iowa Park, Texas, Texas Department of Criminal Justice, Criminal Institution Divisions (TDCJ-CID), Adams filed his original Complaint on April 11, 2011, alleging numerous constitutional violations against three identified defendants and five unidentified defendants, all employees of the Nueces County Jail.  (D.E. 1).

Adams consented to proceedings before a United States magistrate judge the same date.  (D.E. 8).  The case was referred to the undersigned by the District Court on April 29, 2011.  (D.E. 10).

A Spears[1] hearing was conducted on May 25, 2011.  (Minute Entry May 25, 2011). After the hearing, the undersigned ordered the action retained as to the federal claims and the supplemental claims as long as the federal claims were viable.  (D.E. 11).  Service of process on the three named officers and the John Doe defendants was ordered.  (D.E. 12). When service could not be executed on seven of the defendants, a supplemental order for

---

[1]  Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

service of process was issued on June 21, 2011.  (D.E. 18).  Six defendants sought an extension of time to appear and answer, which was granted.  (D.E. 25, 26).

Adams filed notice of his intent to sue defendants in their individual capacities and stipulated to additional time to serve defendants.  (D.E. 27).  The defendants answered the Complaint between August 4, 2011 and November 4, 2011.  (D.E. 28-35, 38, 47, 49).  Each asserted the defenses of qualified immunity and failure to exhaust administrative remedies among others.  (Id.).  All defendants consented to jurisdiction by the United States magistrate judge.  (D.E. 36, 39, 48, 50).  The District Court reassigned this case to the undersigned. (D.E. 53).

The defendants sought and obtained two extensions of time to designate expert witnesses and file reports.  (D.E. 55-58).  Defense experts were designated and reports filed on April 18, 2012.  (D.E. 60).  Defendants also requested and obtained multiple extensions to file dispositive motions.  (D.E. 61-68).  On July 31, 2012, the defendants filed a joint motion for leave to file a joint motion for summary judgment and filed the motion.  (D.E. 69, 70, 72).  The motion was granted on September 7, 2012.  (D.E. 73).  Adams' response to the joint motion was due on October 1, 2012.  (See D.E. 71, 73).  Adams has not responded to the defendant's motion for summary judgment.

### III.  Summary Judgment Evidence

In support of their motion for summary judgment, defendants offer the following evidence:

Ex. A:        Affidavit of Alissa Anne Adkins

Ex. B: Letter from Nueces County Sheriff's Office to United States Marshal Service

Ex. C: Sworn Statements of Defendants

Ex. D: TCLOSE Training Records

Ex. E: Plaintiff's Jail File for Arrest 01/28/09

Ex. F: TDCJ Offender Search record

Ex. G: NC District Clerk Criminal Case Search

Ex. H: Business Record Affidavit with video from NC Jail

Ex. I: Complaint Information and Letters from Adams' sister

Ex. J: Affidavit Grievance Officer and Grievance File

Ex. K: NC Jail Grievance Procedure

Ex. L: Use of Force Policy

Ex. M: Misc. Jail Policies

Ex. N: Inmate Rules & Regulations

Ex. O: Naphcare Correspondence

Ex. P: Christus Spohn Records–Larry Adams

Ex. Q: Dr. William Flores Correspondence

Ex. R: NC Mainframe Computer Record

Ex. S: Allred Unit Correspondence

Ex. T: TDCJ Records

Ex. U: Rib Fracture Information

Ex. V: Unanswered Discovery to Plaintiff

4

Ex. W: NC Jail Bookings for Larry Adams

Adams' Complaint was verified. (D.E. 1). The allegations in a verified complaint may be considered competent summary judgment evidence. Walker v. Nunn, 456 Fed. App'x. 419, (5th Cir. 2011) ( per curiam) (designated unpublished) (citing Hernandez v. Velasquez, 522 F.3d 556, 561 (5th Cir. 2008)).

    1.    *Evidence regarding the alleged use of force*

Taking the verified Complaint allegations as true, the summary judgment evidence is conflicting as to the identity of the officers involved, the nature of the events and whether force, other than handcuffing Adams, was used. Adams received a haircut immediately before he was ordered to "rack up" at approximately 10:30 p.m. by corrections officer Molina. Adams was dissatisfied with the haircut and did not want to rack-up before his haircut was fixed. Adams claims: he did not refuse a direct order by Officer Molina to rack up, Molina was verbally aggressive with him, Adams requested a ranking officer to address the haircut issue, and Molina called for a use of force team. Adams claims that when ordered to get on the ground he did so, but was attacked violently by Officers Molina and Rake while being handcuffed. Adams then claims that he was dragged from the multi-purpose room and Officers Turkey, Rake and others lifted him by his wrists and legs, and with his head facing down, they used him as a "battering ram" to push through a steel elevator door. In the elevator, the officers beat on Adams with their gloved fists. Adams claims he was dragged down the hall to the infirmary where he requested to see a doctor, but he claims he was denied

5

treatment because there was no medical treatment for broken ribs.  Adams alleges that he was seen the next morning by medical.

Evidence from the defendants contradicts Adams version in large part.  Molina ordered Adams to rack-up after his haircut.  Molina ordered him to do so three separate  times, but Adams refused and said Molina could not make him.  (D.E. 70-4 at 7-8).  Adams became aggressive and turned and put his arms up telling Molina that he "better call everyone in." Molina called for assistance.  (Id.).  Officer Zach Williams arrived first and ordered Adams to the floor.  Adams complied.  (Id. at 8).  Although Molina does not recall doing so, his report at the time stated he handcuffed Adams once he was on the ground.  (Id.).  Molina did not escort Adams from the floor.  The next time Molina saw Adams, after the briefing that night, Adams was walking normally and did not have any scars or bruises.  (Id.).  Molina states that he did not observe anyone perform any of the violent acts Adams alleges.  (Id. at 9).

Defendant Zachary Williams remembered Larry Adams after he saw his booking photograph.  (D.E. 70-4 at 21).  He recalls that Adams was unhappy with his haircut. Williams responded to Molina's call for assistance.  (Id.).  Williams does not recall the details, but made a report after the incident with those details.  Williams denies using force or witnessing a use of force against Adams.  (Id. at 22).  Williams' initial report stated that when he arrived at the multi-purpose room, Adams and Molina were facing each other and Adams "was standing in a fighting position."  (D.E. 70-4 at 23).  He and Officer Molina "placed

inmate face down on the floor.  Officer Molina applied restraints.  Inmate was escorted to the second floor by support officers.  Inmate was checked and cleared by medical."  (Id.).

Defendant Mark Turley[2] does not recall Larry Adams or the incident on May 28, 2009.  (D.E. 70-4 at 19).  He denies performing or witnessing any violent acts against Adams.  The policy for inmates who have been subjected to a use of force, even involving handcuffs, is to be checked by medical personnel before being placed in a holding cell.  Additionally, the medical department has a Polaroid camera that is used to document any injuries sustained by inmates at the jail.  (Id.).

Defendant Roger Rakes responded to the officer assistance call, but states that Adams was already restrained when he arrived.  (D.E. 70-4 at 13).  He acknowledges that he weighed approximately 300 pounds.  He denies jumping on Adams or performing any of the violent acts Adams alleges.  Rakes has had broken ribs in the past and states they are very painful and it hurts to move even a little.  He observed the video of Adams taken the night of the incident in which Adams does not appear to be guarding his movements at all.  Standard policy requires that officers take an inmate to medical for evaluation after the use of force, even handcuffs,  before putting the inmate in a holding cell.  Standard practice also includes photographing injuries.  (Id. at 14).

Defendants Alicia Bauer, Jennifer Nunez, Kristen Schick, and Rudy Cuevas all deny any interaction with Larry Adams during the incident on May 28, 2009, deny participating in

---

[2]  Officer Turley was sued as Officer Turkey.  He has not challenged his identification (D.E. 49), nor requested that the caption of the lawsuit be corrected.

any violence against Adams, and deny hearing about or observing any violence involving Adams.  (D.E. 70-4 at 1, 3, 11, 15).   Each states that if such violence had occurred, they would have heard about it and reported it, and use of violence against inmates is contrary to their training.  (Id.).

Defendant Paul Stewart is a lieutenant with the Nueces County Sheriff's Office.  He denied  that he witnessed or participated in any violence against Larry Adams on May 28, 2009.  He did not recall the alleged incident.  He described the training requirements for corrections officers, the prohibition of excessive force, and the reporting requirements for any use of force.  (Id.).

   2.   *Evidence of Adams' injuries*

The evidence regarding Adams' injuries and their cause is also conflicting.  The Nueces County Jail videotape (D.E. 70-9) does not show any of the events in the multi-purpose room, Adams' elevator ride, or visit to medical on May 28, 2009.  The file includes a 10:45 p.m. video of Adams, who was taken into what appears to be a shower facility. Adams is escorted by one officer; he is not cuffed.  Adams is bare chested and is carrying his shirt.  Adams reached behind his back with his left arm and scratched his upper back.  He bent from the waist and removed one sock.  He moved freely around the room.  He does not appear to be angry, upset, or in pain.  Adams then removed another sock and his trousers while standing.  He bent freely from the waist and examined the bottom of one of his feet.  The video does not show any  marks on Adams' face, head or torso and no apparent redness or swelling.

The available medical information reflects that on May 29, 2009, Adams was seen by an R.N. with a complaint of right rib injury.  He was given pain medication and a follow up appointment.  (D.E. 70-10 at 17).  Adams was seen again on June 4, 2009, his medication was changed and an X-ray was taken.  (Id.).  The X-Ray report showed an unusual opacity on the right side at the 5th and 6th ribs laterally.  (D.E. 70-17 at 5).  The report of a CT scan taken on June 12, 2009, revealed a non-union "with a large sizeable collection of callus formation on both anterior and posterior fragments" and a fracture of the 6th rib that is "relatively insignificant compared to that on the right and does not have the same large collection of callus."  (D.E. 70-17 at 2).  The report indicated that the heart is normal in size.  (Id.).  Adams was seen again on June 18, 2009, the last time before his transfer to TDCJ.  (D.E. 70-10 at 17).  Adams' medical records reflect that on July 29, 2009, at intake after his transfer to TDCJ, Adams complained of, "fractured rt ribs in county, still some pain, does not want analgesics."  (D.E. 70-22 at 42).  Adams' chest was not tender and his lungs were clear.  (Id.).  On August 7, 2009, a chest X-Ray report states, "the heart size and contour [are] within normal limits.  The lung fields are clear. . . .There are old healed right rib fractures."  (D.E. 70-25 at 16).

### IV.   Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court

must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations

10

of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence. . . a verdict should not be directed."  Anderson, 477 U.S. at 250–51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.

## V.  Defendants' Summary Judgment Motion

### A.    Exhaustion

Defendants moved for summary judgment to dismiss plaintiff's claims against them on the grounds that plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e of the Prison Litigation Reform Act ("PLRA").

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 83 (2006); Gonzalez v. Seal, — F.3d ----, 2012 WL 6176482 at *2 (Dec. 12, 2012) ("pre-filing exhaustion of prison grievance processes is mandatory.").  Exhaustion is an affirmative defense. Inmates are not required to plead or demonstrate exhaustion in their complaints.  Jones v. Bock, 549 U.S. 199, 215 (2006).

Nueces County has an inmate Grievance Procedure.  (D.E. 70-11 at 1-3).  According to the Grievance Procedure, "inmates are allowed to file a grievance anytime they allege they have been subjected to: 1. Violation of Civil Rights . . .; 4. Prohibited Act by Staff."  (Id. at 3).  The Grievance Procedure supplements but does not replace any informal grievance procedure.  Before filing a grievance, an inmate should take unspecified actions to resolve the matter informally.  (Id.).  The grievance form also indicates that "If the grievance concerns allegations of assault by a county employee, then write straight to the I.G. office instead of the three supervisors mentioned above." (Id.).  According to the Procedure, the greivance will be answered within 15 working days, but emergency matters will be addressed on receipt. (D.E. 70-12 at 2).  An appeal may be taken by submitting an Inmate Communication Form

to Jail Administration.  The appeal board consists of a panel of three, a jail administrator, Counselor, and an impartial civilian employee.  (Id.).  A further appeal may be taken to the Sheriff.

According to the Grievance Officer in charge of the records, Larry Adams did not file a grievance after his arrest on January 28, 2009.  Any such grievance would be found within the records under his control.  (Id. at 2).  However, there is a memo dated June 27, 2009 from Captain Arnold to Assistant Chief McKenzie regarding "Inmate Complaint (Larry Adams SID 10039178)."  (D.E. 70-10 at 1).  The memo relates to the internal investigation conducted by the jail staff. It does not describe the method by which the complaint was reported.  Even if the memo can be liberally construed to be evidence of a grievance filed by Adams, there is no evidence that Adams ever appealed or otherwise exhausted the grievance procedure.

Adams failed to respond to the summary judgment motion and has provided no evidence of exhaustion.[3]  There is no genuine issue of a material fact that Adams failed to exhaust his administrative remedies concerning all of his claims.  Accordingly, the defendants are entitled to summary judgment on the grounds of exhaustion.   A failure to exhaust administrative remedies does not decide the suit on its merits.  See Clifford, 298 F.3d at 333 (dismissal without prejudice for failure to exhaust administrative remedies); Wright v. Hollingsworth, 260 F.3d 357, 359 (5th Cir. 2001).

---

[3]  Although he is not required to plead exhaustion, the Court considers that his verified pleading may constitute summary judgment evidence. Adams does not mention exhaustion in that pleading.  (D.E. 1).

Because Adams failed to exhaust administrative remedies, he is not entitled to proceed further.  Defendants' remaining summary judgment issues are not addressed.

## VI.   CONCLUSION

Defendants' motion for summary judgment (D.E. 70) is granted on the grounds of failure to exhaust administrative remedies Adams' claims are dismissed without prejudice.

ORDERED this 23rd day of January, 2013.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

14